## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NOE D. LEINHEISER,<br><br>               Plaintiff,<br><br>      v.<br><br>DR. AHMAR SHAKIR, et al.,<br><br>               Defendants. | Civil Action<br>No. 22-5848 (CPO) (AMD)<br><br>**OPINION** |

**O'HEARN, District Judge.**

Plaintiff, a federal prisoner, currently incarcerated at Federal Correctional Institution ("FCI") Big Spring, in Big Spring, Texas, is proceeding *pro se* with a Complaint raising claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). For the following reasons, the Court will dismiss Plaintiff's federal claims with prejudice as time barred and decline to exercise supplemental jurisdiction over any state law claims.

## I.  BACKGROUND

The Court will construe the factual allegations of the Complaint as true for the purpose of this Opinion. Plaintiff names only[1] Dr. Ahmar Shakir and Dr. Ravi Sood, as Defendants in this matter. (ECF No. 1, at 1, 4.)

On October 20, 2014, while Plaintiff was incarcerated at the FCI Fort Dix, in Fort Dix, New Jersey, Dr. Shakir, an orthopedic surgeon, performed "a left [an]terior cruciate ligament

---

[1] The instant Complaint concerns the same series of events as those in another case previously filed by Plaintiff, *Leinheiser v. Hoey*, Civ. No. 17-11642, ECF No. 3 (D.N.J.). The Court appointed counsel for Plaintiff in that case. The case remains pending and involves other defendants in addition to Drs. Shakir and Sood. *Id.* Dr. Shakir remains a defendant in that case, but Judge Kugler dismissed Plaintiff's claims against Dr. Sood, without prejudice, for failure to state a claim. *Id.* It appears that Plaintiff never sought to amend his complaint in that case to re-assert claims against Dr. Sood.

(ACL) repair" on Plaintiff. (*Id.* at 5.)  A few days later, on October 29, 2014, "that repair snapped apart." (*Id.*)  Plaintiff alleges that if Dr. Shakir had "kept his scheduled appointment of 2 weeks at roughly Nov. 2, 2014, the injury would have been seen by [Dr.] Shakir and possibly corrected and not ignored by Prison medical staff." (*Id.*)

Eventually, staff took Plaintiff to the hospital on November 14, 2014, as he had a fever and his left leg had "swollen to twice the size" of his right leg because of an infection. (*Id.* at 5–6.)  At the hospital, Dr. Shakir performed a second surgery, an "arthroscopic debridement" on the left knee," and reported that the ACL was "lax but intact."  (*Id.* at 6.)  Plaintiff contends that Dr. Shakir's assessment "may not be entirely" true and alleges that Dr. Shakir may have misrepresented medical files in some way. (*Id.*)  Afterwards, Dr. Shakir "did not do a follow-up visit until February 10, 2015." (*Id.*)  The Complaint offers no further details as to Dr. Shakir.

As to Dr. Sood, Plaintiff alleges that he saw Dr. Sood on March 2, 2014, and May 19, 2014, for issues related to his knee, but alleges that Dr. Sood "failed to do [other] follow-up visits in 2014." (*Id.*)  At unspecified points during this time period, Dr. Sood reviewed Plaintiff's lab reports regarding his "blood level" but "never addressed this issue or made any attempt to correct" it— Plaintiff does not explain the "blood level" issue in the Complaint. (*Id.*)  In subsequent filings that are not part of the Complaint, Plaintiff alleges that Defendants sought to conceal that Plaintiff suffered "a large amount of blood loss," at an unspecified time during or before Plaintiff's second surgery. (ECF No. 6, at 1.)  Next, Plaintiff alleges that Dr. Sood refused to provide unspecified treatment or treatments to Plaintiff, for reasons related to Plaintiff's Body Mass Index ("BMI"), but his BMI was not an issue until August 28, 2017. (ECF No. 1, at 6.)  The Complaint offers no further factual details.

On September 16, 2022, Plaintiff filed the instant Complaint.[2]  In terms of relief, Plaintiff asks the Court to order the Federal Bureau of Prisons ("BOP") to provide a full knee replacement surgery, "professional physical therapy[,] . . . effective pain medication and management," and to remove a "femur screw that was left carelessly behind by" Dr. Shakir. (*Id.* at 6.)  The BOP, however, is not a party in this case.  Plaintiff also seeks $10,000,000.00 in monetary damages. (*Id.* at 7.)

As the instant Complaint addressed the same series of events as those in Civ. No. 17-11642, and because the Court had already appointed Plaintiff counsel in that case, the Court ordered Plaintiff to clarify whether he wished to proceed with his filing as an entirely new complaint or proceed with his filing as a proposed motion to amend in Civ. No. 17-11642. (ECF No. 2.)  The Court also advised Plaintiff that because every action in the Complaint occurred more than two years prior to the new filing date, the statute of limitations would most likely bar his claims if he were to proceed with a new complaint. (*Id.* at 1.)  Nevertheless, Plaintiff advised that he wished to proceed with his filing as an entirely new complaint. (ECF No. 3.)

In December of 2022, the Court ordered Plaintiff to show cause as to why the Court should not dismiss this matter as time barred, and Plaintiff submitted his response. (ECF Nos. 4, 5–6.) Plaintiff labeled his response as a motion to exclude the statute of limitations and a motion to add a claim of residual injury, but the Court will construe the substance of his filing as an ordinary response to the Order to Show Cause. (ECF Nos. 6, 6-1.)

---

[2] Under the prison mailbox rule, the Court will accept the date on Plaintiff's Complaint as the filing date, rather than the date that the Court actually received his Complaint. *E.g.*, *Hedgespeth v. Hendricks*, No. 06-3883, 2007 WL 2769627, at *3 (D.N.J. Sept. 21, 2007), *aff'd*, 340 F. App'x 767 (3d Cir. 2009).

## II.  STANDARD OF REVIEW

District courts must review complaints in civil actions in which a plaintiff is proceeding *in forma pauperis* and in which a plaintiff sues "a governmental entity or officer or employee of a governmental entity." *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a).  District courts must *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b).  When considering a dismissal for failure to state a claim on which relief can be granted, courts apply the same standard of review as that for dismissing a complaint under Federal Rule of Civil Procedure 12(b)(6).  *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012).

Consequently, to survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, while courts liberally construe *pro se* pleadings, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

In addition to these pleading rules, a complaint must satisfy Federal Rule of Civil Procedure 8(a), which states that a complaint must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

"Thus, a *pro se* plaintiff's well-pleaded complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a 'short and plain' statement of a cause of action." *Johnson v. Koehler*, No. 18-00807, 2019 WL 1231679, at *3 (M.D. Pa. Mar. 15, 2019). Stated differently, Rule 8 requires a showing that the plaintiff is entitled to relief in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id*. (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

## III. DISCUSSION

### A.  Statute of Limitations

The Court will first address the statute of limitations as it appears from the face of the Complaint that Plaintiff's federal claims are time-barred. "Although the running of the statute of limitations is ordinarily an affirmative defense, where that defense is obvious from the face of the complaint . . . a court may dismiss a time-barred complaint *sua sponte* . . . for failure to state a claim." *Ostuni v. Wa Wa's Mart*, 532 F. App'x 110, 112 (3d Cir. 2013).

Our jurisprudence takes the statute of limitations for a *Bivens* claim from the forum state's personal injury statute. *See Hughes v. Knieblher*, 341 F. App'x 749, 752 (3d Cir. 2009) (per curiam). New Jersey's statute of limitations for personal injury actions is two years. *See* N.J. Stat. § 2A:14–2. "While state law provides the applicable statute of limitations, federal law controls when a *Bivens* claim accrues." *Peguero v. Meyer*, 520 F. App'x 58, 60 (3d Cir. 2013) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). Under federal law, a *Bivens* claims accrues when a plaintiff knows of or has reason to know of the injury, "not upon awareness that this injury constitutes a legal wrong." *Hilton v. Kronenfeld*, No. 04-6420, 2008 WL 305276, at *7 (D.N.J. Jan. 29, 2008) (quoting *Oshiver v. Levin*, 38 F.3d 1380, 1386 (3d Cir. 1994)); *see also Hughes*,

341 F. App'x at 752; *Muhammad v. Erie Cnty. Convention Ctr. Auth.*, No. 20-162, 2021 WL 3603617, at *2 (W.D. Pa. Aug. 13, 2021).

Rather, "a cause of action accrues when the fact of injury and its connection to the defendant would be recognized by a reasonable person." *Kriss v. Fayette Cty.*, 827 F.Supp.2d 477, 484 (W.D. Pa. 2011), *aff'd*, 504 F. App'x 182 (3d Cir. 2012); *see also e.g.*, *Byrd v. Finley*, No. 19-6879, 2023 WL 1420445, at *6 (D.N.J. Jan. 31, 2023). The inquiry is an objective one and does not ask "what the plaintiff actually knew but what a reasonable person should have known." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). Accordingly, "[a]s a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Id.*

Here, Plaintiff complains of denials and delays in his medical care which may fall under the Eighth Amendment's prohibition against cruel and unusual punishment. For the delay or denial of medical care to rise to a constitutional violation, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). More specifically, courts have found deliberate indifference where a person: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197.

That said, courts give deference to prison medical authorities in the diagnosis and treatment of patients and will not "second-guess the propriety or adequacy of a particular course of treatment

. . . [which] remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).  As a result, allegations of medical malpractice or negligent treatment do not rise to constitutional violations. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013) (per curiam).

Applying those principles here, assuming *arguendo* that Plaintiff had otherwise valid *Bivens* claims, every event in the Complaint took place between October of 2014, and August of 2017. (ECF No. 1.)  Plaintiff contends that Dr. Shakir's ACL surgeries and Drs. Shakir and Sood's subsequent treatment thereof, caused him substantial pain and suffering throughout the events in the Complaint. (*Id.* at 4–6.)  In particular, Plaintiff suffered a noticeable harm when his ACL "snapped" after surgery, on October 29, 2014, and Dr. Shakir delayed or denied medical treatment over the next two weeks. (*Id.* at 5–6.)  Certainly, Plaintiff should have noticed a harm when his left leg had "swollen to twice the size of" his right leg and was taken to the hospital on November 14, 2014. (*Id.*)  Additionally, as to Dr. Sood, Plaintiff was certainly aware that he suffered harm when Dr. Sood refused to provide the unspecified medical treatment(s) at issue and failed to perform "follow-up visits in 2014." (*Id.*)

Taken together, Plaintiff knew or should have known of his injuries throughout the events of the Complaint, from October of 2014 through August of 2017.  As a result, assuming Plaintiff had facts to plead the remaining elements of a deliberate indifference *Bivens* claim, he knew or should have known of his injuries, their connection to the Defendants, and had complete causes of action, *at the latest*, by February 10, 2015, as to Dr. Shakir, and August 28, 2017, as to Dr. Sood, which are the last dates in the Complaint as to each doctor (ECF No. 1, at 6.)  Consequently, at the latest, the statute of limitations on these claims began to run on those dates, and expired two years later in February of 2017, and August of 2019, respectively.

Additionally, Plaintiff was plainly aware of his injuries in November of 2017, when he filed a complaint against Drs. Shakir and Sood, in Civ. No. 17-11642, regarding the same series of events. (*Leinheiser*, Civ. No. 17-11642, ECF No. 1-2.)   Absent tolling, because Plaintiff did not file the instant Complaint until September 16, 2022, the statute of limitations bars these claims and any related claims with a two-year statute of limitations that began to accrue prior to September 16, 2020.

### B.  Equitable Tolling

Certain statutes and doctrines may allow the Court to toll the statute of limitations.  For example, New Jersey statutes set forth certain bases for "statutory tolling." *See, e.g.*, N.J. Stat. § 2A:14–21 (detailing tolling because of minority or insanity); N.J. Stat. § 2A:14–22 (detailing tolling because of non-residency of persons liable).  New Jersey law also permits "equitable tolling" where an adversary's misconduct induced or tricked a complainant into allowing the filing deadline to pass, or where "in some extraordinary way" someone or something prevented plaintiff from asserting his rights, or where a plaintiff has timely asserted his rights through a defective pleading or in the wrong forum. *See Freeman v. New Jersey*, 788 A.2d 867, 880 (N.J. Super. Ct. App. Div. 2002).  However, absent a showing of a defendant's intentional inducement or trickery, the Court should apply the doctrine of equitable tolling sparingly and only where sound legal principles and the interest of justice demand its application. *Id.*

When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrines. *See Lake v. Arnold*, 232 F.3d 360, 370 (3d Cir. 2000).  Under federal law, equitable tolling is appropriate in three general scenarios: (1) where a defendant actively misleads a plaintiff with respect to his cause of action; (2) where extraordinary

circumstances prevent a plaintiff from asserting his claims; or (3) where the plaintiff asserts his claims in a timely manner but has done so in the wrong forum. *Id.* at 370 n.9.

In the present case, in response to the Court's Order to Show Cause, Plaintiff appears to raise a number of arguments, but those arguments are poorly delineated. (ECF No. 6.)  The Court will construe Plaintiff as arguing that the Court should excuse his late filing because: (1) Defendants engaged in trickery by falsifying his medical records; (2) under the discovery rule, he only discovered the extent of his injuries at a more recent but unspecified date; and (3) he is suffering a continuous injury under the continuing violation doctrine.

As to Plaintiff's first argument, he alleges that Drs. Shakir and Sood falsified medical records to conceal "a large amount of blood loss," that occurred before or during his second surgery. (ECF No. 6, at 1.)  Plaintiff secured a report from a fellow prisoner, who has a medical degree, who opined that that level of blood loss could have caused "permanent damage to vital organs due to oxygenated blood insufficiency and could lead to a stroke or heart attack." (ECF No. 6-2, at 5.)

To the extent Plaintiff argues that this trickery prevented him from filing a timely Complaint, the Court disagrees.  As discussed above, Plaintiff was plainly aware that Defendants had caused him some amount of harm, in 2014 and 2015, and he could have easily filed a timely complaint.  Indeed, even assuming Defendants falsified his medical records, that trickery clearly did not prevent Plaintiff from filing an earlier complaint, since he filed a complaint against the Defendants in November of 2017, regarding the exact same series of events. (*Leinheiser*, Civ. No. 17-11642, ECF No. 1-2.)  Plaintiff could have simply amended his complaint in that case to address the blood loss issue.  Alternatively, the blood loss issue could already be part of that case, as it could be relevant to the issue of damages.

Next, Plaintiff contends that the Court should excuse his late filing because he only discovered the extent of his injuries at a more recent but *unspecified* date. (ECF No. 6-2, at 5 (mentioning that Plaintiff was not aware of the blood loss issue "until his medical records were recently reviewed").)  In New Jersey, the discovery rule permits a delay of the two-year statute of limitations where a "plaintiff is reasonably unaware that he has suffered an injury or, even though he is aware of the injury, that it was the fault of an identifiable person." *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (citing *Caravaggio v. D'Agostini*, 765 A.2d 182, 187 (N.J. 2001)).  The rule postpones accrual until the "injured party discovers, or by exercise of reasonable diligence and intelligence should have discovered[,] that he may have a basis for an actionable claim." *Id.*  Once a potential claimant becomes aware of the injury and that someone was at fault, however, then the statute of limitations begins to run. *See Grunwald v. Bronkesh*, 621 A.2d 459, 463 (N.J. 1993).  Critically, a "plaintiff's ignorance regarding the full extent of his injury is irrelevant to the discovery rule's application, so long as the plaintiff discovers or should have discovered that he was injured." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) (citing *Kach*, 589 F.3d at 635).  Stated differently, the statute of limitations begins to run "even though the full extent of the injury is not then known or predictable."  *Kach*, 589 F.3d at 635.

With those principles in mind, consideration of the discovery rule does not change the Court's conclusion that Plaintiff's federal claims are untimely.  At the outset, Plaintiff fails to specify when he "discovered" this alleged new information and whether that date fell within the statute of limitations. (ECF No. 6.)  Furthermore, although Plaintiff contends that he learned of these additional injuries stemming from Dr. Shakir's surgeries more recently, he was keenly aware that Dr. Shakir had caused him *some* amount of harm shortly after both surgeries, when he denied or delayed medical care. (ECF No. 1, at 5–6.)  As to Dr. Sood, Plaintiff was certainly aware that

he suffered *some* amount of harm when Dr. Sood refused to provide the unspecified treatment and failed to perform "follow-up visits in 2014." (*Id.*)

Ultimately, the Complaint demonstrates that Plaintiff was cognizant that Defendants had violated his rights and harmed him in some way, at the latest, by February 10, 2015, as to Dr. Shakir, and August 28, 2017, as to Dr. Sood, which are the last dates in the Complaint as to each doctor. (ECF No. 1, at 6.)  Consequently, at those points, Plaintiff had complete causes of action as to those claims, "regardless of . . . any additional" injuries that were later revealed as stemming from the ACL surgeries. *See Stephens*, 796 F.3d at 288.  Once again, the statute of limitations begins to run "even though the full extent of the injury is not then known or predictable."  *Kach*, 589 F.3d at 635.   Accordingly, for those reasons, the discovery rule does not change the Court's conclusion that Plaintiff's federal claims are time barred.

Finally, Plaintiff argues that the Court should excuse his late filing under the continuing violation doctrine.  "The continuing violation[] doctrine is an equitable exception to the statute of limitations." *Spencer v. Courtier*, 552 F. App'x 121, 123 (3d Cir. 2014).  It postpones the running of the statute of limitations "when a defendant's conduct is part of a continuing practice." *Randall v. City of Philadelphia Law Department*, 919 F.3d 196, 198 (quoting *Brenner v. Local 514, United Bhd. Of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991)).  "If a defendant's conduct constitutes a continuing practice, the entire claim may be timely if the last act of the practice falls within the statute of limitations." *Spencer*, 552 F. App'x at 123 (citing *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)).

Critically, "the continuing-violation doctrine focuses on continuing *acts*, not *effects*." *Randall*, 919 F.3d at 199 (emphasis in original).  "In other words, the doctrine relies on a *defendant's* continuing acts, not a *plaintiff's* continuing injury." *Id.* (emphasis in original).  In sum,

a plaintiff must demonstrate that a defendant committed at least one affirmative act within the statute of limitations, and that that act was part of a continuing practice to violate the plaintiff's rights. *Id.*; *see also Smith v. Dunn*, No. 20-2404, 2022 WL 1011214, at *2 (3d Cir. Apr. 5, 2022).

In order to establish that a defendant's conduct was part of a continuing practice, a plaintiff must demonstrate that "the defendant's conduct was more than isolated or sporadic acts." *Spencer*, 552 F. App'x at 123.  To make this determination, courts consider two factors: "(1) whether the violations were related in subject matter and (2) whether the acts were recurring." *Bennett v. Susquehanna Cnty. Child. & Youth Servs.*, 592 F. App'x 81, 84 (3d Cir. 2014); *Smith v. Twp. of Warren*, No. 14-7178, 2016 WL 7409952, at *14 (D.N.J. Dec. 22, 2016).  The Third Circuit has cautioned, however, that "the continuing violation[] doctrine is not a substitute for a plaintiff's awareness of and duty to assert his/her rights in a timely fashion." *Bennett*, 592 F. App'x at 85 (internal quotation marks omitted).  Consequently, "the doctrine does not apply when plaintiffs are aware of the injury at the time it occurred." *Id.* (internal quotation marks omitted).

Applying those principles here, Plaintiff does not allege that Dr. Shakir took any affirmative actions after February 10, 2015, and he does not allege that Dr. Sood took any affirmative actions after August 28, 2017. (ECF No. 1, at 5–6.)  Consequently, Plaintiff has failed to allege that Defendants undertook any affirmative acts within the statute of limitations, *i.e.*, within two years of when he filed the Complaint on September 16, 2022.[3]  Effectively, Plaintiff

---

[3] Although not necessary to the Court's disposition, the Court observes that Plaintiff filed a notice of change of address in Civ. No. 17-11642, in May of 2019, advising that the BOP transferred him from FCI Fort Dix to FCI Otisville, in Otisville, New York. (*Leinheiser*, Civ. No. 17-11642, ECF No. 13.)  As a result, it is not apparent that Drs. Shakir and Sood would have had any involvement in Plaintiff's medical care during the two-year limitations period.  Additionally, in response to the Court's Order to Show Cause, Plaintiff submitted documents that indicate that he was residing at FCI Big Spring, in Big Spring Texas, at least as early as September 9, 2021.  (ECF No. 6-3, at 14.) Accordingly, it appears unlikely that Drs. Shakir and Sood are currently responsible for Plaintiff's medical care.

alleges that he still suffers the *effects* of Defendants' actions, but the doctrine requires continuing *acts* on the part of Defendants. *Randall*, 919 F.3d at 199.  Without an affirmative act within the limitations period, the continuing violation doctrine cannot apply. *Dunn*, 2022 WL 1011214, at *2 (finding that the continuing violation doctrine did not apply under similar circumstances). Additionally, as explained above, Plaintiff was well aware of his injuries, through the excruciating pain he suffered throughout the events in the Complaint.  As Plaintiff was aware of his injuries "at the time [they] occurred," the continuing violation doctrine does not apply for that reason as well. *Bennett*, 592 F. App'x at 85.

       For all those reasons, Plaintiff is not entitled to equitable tolling and his federal claims remain time barred.  Accordingly, the Court will dismiss those claims with prejudice as time barred.  Finally, as no federal claims remain in this case, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, including any attempted negligence or medical malpractice claims. *See* 28 U.S.C. § 1367(c)(3); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).

---

## IV. CONCLUSION

For the reasons set forth above, the Court will dismiss Plaintiff's federal claims with prejudice as time barred and will decline to exercise supplemental jurisdiction over his state law claims.  To the extent Plaintiff intended to file separate motions to exclude the statute of limitations and to add a claim of residual injury within his response to the Order to Show Cause, the Court will deny those motions as moot.  An appropriate Order follows.

Dated:  April 13, 2023

/s/ Christine P. O'Hearn
**Christine P. O'Hearn**
**United States District Judge**

14